IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Society of Lloyds,                    )
                                      )
                    Plaintiff,        )  Case No. 1:05-CV-32
                                      )
        vs.                           )
                                      )
Lea Adkins Ward, *et al.*,            )
                                      )
                    Defendants.       )

Memorandum and Order

In this action, Plaintiff seeks to avoid and have set aside the conveyance of the real estate located at 9600 Tall Trail, Cincinnati, from the Ward Trust, as defined by the parties, to the Moore Trust, as defined by the parties, on July 23, 2004.[1]  The action is now before the Court on five motions by various parties: Defendant Paul Sittenfeld's motion for summary judgment (Doc. 32); Plaintiff's motion for summary judgment on its own claims (Doc. 64); Defendants' motion to defer consideration of Plaintiff's motion for summary judgment until the conclusion of discovery (Doc. 70); Plaintiffs' motion for summary judgment with respect to the counterclaims of various current and former Defendants (Doc. 78); and Defendants' motion

---

[1]Plaintiff has so limited its claim in the context of its motion for summary judgment and does not object to Defendants' characterization of the claim in this fashion.  To the extent that the complaint includes allegations of fraud with respect to other conveyances, the Court considers Plaintiff's claims with respect to those conveyances to be dismissed.

for summary judgment with respect to Plaintiff's claims (Doc. 82).

A.  A Brief Recitation of Pertinent Facts

Plaintiff obtained a judgment against Defendant Lea Adkins Ward in England (the "English Judgment") on March 11, 1998.  In March 2004, Plaintiff initiated an action in this Court, 1:04-CV-191, for recognition of the English Judgment. When it learned in discovery or mediation in the 1:04-CV-191 action that the real property at 9600 Tall Trail, once owned by Defendant Ward, had been the subject of various conveyances, it initiated this action and immediately sought a temporary restraining order.  On January 20, 2005, this Court denied Plaintiff's motion for a temporary restraining order on several bases, including its preliminary conclusion that Defendants were likely to prove that the transfer in question was supported by fair consideration.  On September 28, 2005, this Court entered judgment against Defendant Ward in 1:04-CV-191 in the amount of £331,724.46.[2]

In addition to Lea Adkins Ward, Plaintiff originally named the following individuals and entities as defendants in this action:  Betty R. Moore, Defendant Ward's mother, as Trustee of the Moore Trust; Alfred Moore, Defendant Ward's stepfather, as

---

[2]The value of that sum in United States currency as of December 26, 2005, was approximately $576,000.

a Trustee of the Moore Trust; Paul Sittenfeld as a Trustee of the
Moore Trust; Thomas Emery's Sons, LLC, of which Defendant Ward
was alleged to have been a part-owner; and Shadow Hill I, LLC, of
which Defendant Ward was alleged to have been a part-owner.  On
February 2, 2005, Plaintiff filed its first amended complaint,
naming the following individuals as Defendants:  Lea Adkins Ward;
Betty Moore as Trustee of the Moore Trust; Alfred Moore as a
grantor under the Moore Trust; Paul Sittenfeld as a Trustee of
the Moore Trust; and Donald L. Mellott, Jr., as a Trustee of a
trust to which Defendant Ward's interests in Thomas Emery's Sons,
LLC, and Shadow Hill I, LLC, were alleged to have been
transferred.  Plaintiff alleged that the transfer of 9600 Tall
Trail from the Ward Trust to the Moore Trust on July 23, 2004,
was a fraudulent conveyance under Ohio law, undertaken to delay,
hinder, and defraud Plaintiff in its efforts to collect on the
English Judgment.

       One week after Plaintiff filed its first amended
complaint in this matter, effectively dismissing Thomas Emery's
Sons, LLC, and Shadow Hill I, LLC, as parties, each of the
following parties filed an answer to the original complaint and
asserted counterclaims against Plaintiff: Defendant Ward;
Defendant Betty Moore; Defendant Alfred Moore; Defendant
Sittenfeld; Thomas Emery's Sons, LLC; and Shadow Hill I, LLC.
Two weeks later, the following parties filed their answers to the

3

first amended complaint and asserted counterclaims: Defendant Ward, Defendant Betty Moore, Defendant Alfred Moore, and Defendant Sittenfeld.  Defendants Ward, Betty Moore, Alfred Moore, and Sittenfeld assert identical counterclaims in five counts: breach of contract based upon Plaintiff's use in this litigation of documents allegedly protected under two agreements between the parties; abuse of process based upon the maintenance of this action after the denial of Plaintiff's motion for a temporary restraining order; violation of Ohio Revised Code ("O.R.C.") § 2323.51 based upon the maintenance of this allegedly frivolous action; tortious interference with business relationships between Moore Trust and the real estate agent it has engaged to sell 9600 Tall Trail and between Moore Trust and potential purchasers of that real property; and slander of the Moore Trust's title to 9600 Tall Trail.

On March 15, 2005, Defendant Sittenfeld moved for summary judgment in this matter (Doc. 32).  He observed that Plaintiff had not asserted a claim for relief against him.  On April 8, 2005, Plaintiff filed its memorandum in opposition to Defendant Sittenfeld's motion and argued that its claims against him were based upon his actions.  By order dated June 30, 2005, this Court struck Plaintiff's memorandum on a motion by Defendant Sittenfeld.  The Court observed that Plaintiff's arguments were in direct contradiction to its allegations in the first amended

4

complaint.  The Court further observed, however, that Plaintiff
had hinted that Defendant Sittenfeld's participation in this
matter is required because, in the event that the Court were to
grant the relief Plaintiff seeks, the Trustees of the Moore Trust
may be required to take certain actions.  The Court allowed
Plaintiff an additional period of time within which to file a
memorandum in opposition to Defendant Sittenfeld's motion.  The
Court expressly permitted Plaintiff to file a memorandum in
support of its suggestion that Defendant Sittenfeld must remain a
party in this action for remedial purposes.  The Court advised
that it would grant Defendant Sittenfeld's motion for summary
judgment in the event that Plaintiff failed to file a memorandum
in support of that suggestion.

        When Plaintiff filed its replacement memorandum in
opposition to Defendant Sittenfeld's motion for summary judgment,
it based its contention that Mr. Sittenfeld must remain a party
in this action upon Rule 19(a)(2) of the Federal Rules of Civil
Procedure.  That Rule permits the joinder of a person who claims
an interest relating to the subject of an action when the
disposition of the action in his or her absence may impair or
impede his or her ability to protect that interest or leave any
of the other parties subject to a substantial risk of incurring
inconsistent of multiple obligations.  The only argument
Plaintiff has made with respect to the applicability of Rule

19(a)(2) is that Defendant Sittenfeld's ability to set up any defenses against the foreclosure of the Moore Trust's interest in 9600 Tall Trail may be impeded if he is not a party to this action.

On April 4, 2005, by stipulation of the parties, Plaintiff dismissed its claims against Donald L. Mellott, Jr. Mr. Mellott is no longer a party in this action.

Plaintiff filed its motion for summary judgment with respect to its own claims in this matter (Doc. 64) on July 29, 2005, before discovery was complete. Defendants moved the Court to defer consideration of that motion pending the completion of discovery. (See Doc. 70). The passage of time has rendered that motion moot, however. Discovery has been completed, and Defendants have been afforded the opportunity to respond to Plaintiff's motion with the benefit of all of the evidence they have been able to obtain in discovery.

On September 21, 2005, Plaintiff filed a motion for summary judgment with respect to all of the pending counterclaims (Doc. 78). It argued that it had not breached any agreement between the parties by virtue of its use or publication of documents in this action. It argued for summary judgment with respect to the other counterclaims on the grounds that its maintenance of this action has not been for the purpose of harassing Defendants, that the action is not frivolous, and that

6

the Defendants cannot establish that it is liable for either tortious interference with business relationships or slander of title.

On October 31, 2005, Defendants moved for summary judgment with respect to Plaintiff's claims.  They argued that the transfer of 9600 Tall Trail was not a fraudulent conveyance and that various defenses shield them from liability.  They also argued that, to the extent that it has attempted to assert a claim for common law fraud, Plaintiff has failed to plead fraud with specificity and its claim is preempted by the statutes under which it has sued Defendants.

B.  <u>The Summary Judgment Standard</u>

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The evidence presented on a motion for summary judgment is construed in the light most favorable to the non-moving party, who is given the benefit of all favorable inferences that can be drawn therefrom.  <u>United States v. Diebold, Inc.</u>, 369 U.S. 654 (1962).  "The mere existence of <u>some</u> alleged factual dispute between the parties will not defeat an otherwise properly

7

supported motion for summary judgment; the requirement is that there be no _genuine_ issue of _material_ fact." _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 248 (1986)(emphasis in original).

The Court will not grant summary judgment unless it is clear that a trial is unnecessary. The threshold inquiry to determine whether there is a need for trial is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." _Anderson_, 477 U.S. at 250. There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. _Id._

The fact that the weight of the evidence favors the moving party does not authorize a court to grant summary judgment. _Poller v. Columbia Broadcasting System, Inc._, 368 U.S. 464, 472 (1962). "[T]he issue of material fact required by Rule 56(c) . . . to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or a judge to resolve the parties' differing versions of the truth at trial." _First National Bank v. Cities Service Co._, 391 U.S. 253, 288-89 (1968).

Moreover, although summary judgment must be used with extreme caution since it operates to deny a litigant his day in

court, <u>Smith v. Hudson</u>, 600 F.2d 60, 63 (6th Cir.), <u>cert. dismissed</u>, 444 U.S. 986 (1979), the United States Supreme Court has stated that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 327 (1986).  According to the Supreme Court, the standard for granting summary judgment mirrors the standard for a directed verdict, and thus summary judgment is appropriate if the moving party establishes that there is insufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  <u>Id.</u> at 323; <u>Anderson</u>, 477 U.S. at 250.

Accordingly, summary judgment is clearly proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case and on which that party will bear the burden of proof at trial." <u>Celotex Corp.</u>, 477 U.S. at 322.  Significantly, the Supreme Court also instructs that the "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion" against a party who fails to make that showing with significantly probative evidence.  <u>Id.</u>; <u>Anderson</u>, 477 U.S. at 250.  Rule 56(e) requires the non-moving

party to go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial."  Id.

Further, there is no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or similar materials negating the opponent's claim.  Id.  Rule 56(a) and (b) provide that parties may move for summary judgment "with or without supporting affidavits."  Accordingly, where the non-moving party will bear the burden of proof at trial on a dispositive issue, summary judgment may be appropriate based solely on the pleadings, depositions, answers to interrogatories, and admissions on file.

    C.  Defendant Sittenfeld's Motion

As the Court has noted, Plaintiff has articulated only one basis for opposing Defendant Sittenfeld's motion for summary judgment.  Defendant Sittenfeld argues that he is entitled to summary judgment because Plaintiff has not alleged any action by him giving rise to liability.  In its original memorandum in opposition, Plaintiff argued that he is, nevertheless, a necessary party because the Court may be unable to afford Plaintiff the relief it seeks in his absence.

In the subsequent memorandum in which Plaintiff was required to demonstrate that Defendant Sittenfeld's participation in this action was required for remedial purposes, Plaintiff

makes no argument to that effect.  It fails utterly in supporting the sole argument it has raised for the maintenance of its claims against Defendant Sittenfeld.

Instead, Plaintiff argues, under Rule 19(a)(2), that Defendant Sittenfeld's participation in this action is required because he claims an interest in 9600 Tall Trail as a co-Trustee of the Moore Trust and his ability to protect that interest may be impaired or impeded by virtue of the disposition of this action in his absence.  Plaintiff has not demonstrated how the ability of the Moore Trust, which is represented by Betty Moore as co-Trustee and Defendant in this action, to protect its interest in 9600 Tall Trail may be impaired or impeded by virtue of Paul Sittenfeld's absence.  Moreover, Plaintiff has failed to take account of the fact that Mr. Sittenfeld has asserted various claims on behalf of the Moore Trust in his capacity as counterclaimant.  Accordingly, he has taken action to protect the interest of the Moore Trust in 9600 Tall Trail, and Plaintiff has not identified a manner in which his ability to do so would be impaired or impeded in the event that he were to be dismissed as Defendant.

For all of those reason, the Court is persuaded that Plaintiff has failed to carry its burden of identifying a basis for the Court's permitting it to maintain its claims against Mr. Sittenfeld.  His motion for summary judgment (Doc. 32) is,

11

therefore, hereby **GRANTED**, and he is **DISMISSED** as a defendant in
this action.

    D.   <u>The Cross-Motions with Respect to Plaintiff's Claims</u>

        Plaintiff asserts its claim to avoid and set aside the
transfer of 9600 Tall Trail from the Ward Trust to the Moore
Trust pursuant to O.R.C. §§ 1336.01, *et seq.* Plaintiff and
Defendants move for summary judgment with respect to that claim.
Defendants also move for summary judgment with respect to any
claim Plaintiff may have intended to assert under Ohio's common
law of fraud.

        The Court has studied the parties' memoranda as they
pertain to the fraudulent conveyance claim and the defenses
thereto and has reviewed the evidence. The Court has also
considered the relevant authorities, controlling, persuasive, and
otherwise. Having done so, the Court is persuaded that summary
judgment with respect to the fraudulent conveyance claim is not
appropriate.

        Plaintiff has summed up the genuine issues of material
fact precluding summary judgment on the first page of its reply
memorandum in support of its own motion. There, it argues that
it is entitled to summary judgment if any of the following
questions prompts a response in its favor:

    1. Did Defendant Lea Ward's ex-husband have a claim

against her in July, 2004?

2. Did Defendant Lea Ward (not the Moore Trust, but the Defendant herself) receive less than reasonably equivalent value for the transfer?

3. Is the executory promise to support Defendant Lea Ward "unperformed"?

4. Was Defendant Lea Ward insolvent at the time of the transfer?

5. Finally, do sufficient badges of fraud exist to show that the transfer was fraudulent?

Plaintiff identifies those issues in the context of arguing that the answer to each favors Plaintiff as a matter of law. The Court is persuaded, however, that unresolved factual questions preclude conclusive answers in Plaintiff's favor to each. The Court has identified other unresolved issues of material fact relating to intent, the contemporaneous nature of the transfer and the consideration therefor, and the date upon which Defendant Ward became insolvent which may also preclude the resolution of this matter without a trial.

Because no party has demanded a jury trial, this Court will be required to resolve some or all of those questions in the event that the parties do not resolve this matter among themselves prior to trial. A detailed discussion of the evidence is not necessary in order for the Court to advise the parties that it is not persuaded that Plaintiff has established that it is entitled to judgment as a matter of law with respect to the

fraudulent conveyance claim on any of the theories it has asserted.  The Court is equally unpersuaded that Defendants are entitled to judgment as a matter of law with respect to that claim on the basis of any of the defenses they have asserted. All of those defenses are supported, and refuted, by evidence of record.

Defendants also move for summary judgment with respect to any common law fraud claim Plaintiff may have intended to assert in this matter.  They argue that such a claim is preempted by statute to the extent that it is based upon the same actions as underlie Plaintiff's fraudulent conveyance claim and that claim affords them the relief to which they are entitled.  They also argue that the claim is not pleaded with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

In opposition to Defendants' motion for summary judgment, Plaintiff does not argue that a common law fraud claim based upon the transfer of 9600 Tall Trail from the Ward Trust to the Moore Trust affords it relief that is not available through the fraudulent conveyance claim.  It does not, accordingly, oppose the motion on the basis asserted.  Instead, Plaintiff argues that it is entitled to relief for misrepresentations Defendant Ward made in the context of the collection action, 1:04-CV-191.  Plaintiff argues that it was injured by virtue of its reliance on those misrepresentations.

14

Rule 9(b) requires, with respect to a claim of fraud, that "the circumstances constituting fraud . . . shall be stated with particularity." Plaintiff did not allege in its first amended complaint that Defendant Ward had made misrepresentations in the context of the collection action upon which Plaintiff relied to its detriment. While an allegation that Defendant Ward misrepresented her status as owner of 9600 Tall Trail on May 12, 2004 is included, that allegation is in the context of describing the transactions underlying Plaintiff's fraudulent conveyance claim. The particulars of the common law fraud claim Plaintiff now identifies are not found in the complaint. For those reasons, the Court is persuaded that Defendants are entitled to summary judgment with respect to any such claim Plaintiff may have intended to assert. Plaintiff's motion for summary judgment (Doc. 64) is hereby **DENIED**. Defendants' motion for summary judgment with respect to Plaintiff's claims against them (Doc. 78) is **GRANTED** as to the common law fraud claim and **DENIED** as to the fraudulent conveyance claim. Their motion (Doc. 70) to defer consideration of Plaintiff's motion for summary judgment is **DENIED** as **MOOT**.

E.  <u>The Motion with Respect to the Counterclaims</u>

As the Court noted in the recitation of pertinent facts, Thomas Emery's Sons, LLC, and Shadow Hill I, LLC, filed answers and counterclaims in this matter one week after Plaintiff amended its complaint, effectively dismissing them as parties. At the time of the assertion of the counterclaims, Thomas Emery's Sons, LLC, and Shadow Hill I, LLC, were not opposing parties in this action.  Accordingly, their claims against Plaintiff are neither compulsory counterclaims nor permissive counterclaims. Those counterclaims (Doc. 17 and Doc. 18) are, therefore, hereby **STRICKEN**.

Defendants Ward, Betty Moore, Alfred Moore, and Sittenfeld have asserted counterclaims for breach of contract, abuse of process, violation of O.R.C. § 2323.51, tortious interference with business relationships, and slander of title. Plaintiff seeks summary judgment with respect to each of those claims.

1.  The Breach of Contract Counterclaim

The breach of contract counterclaim is based upon actions taken by Plaintiff in alleged breach of an agreed protective order and a mediation confidentiality agreement protecting documents provided by Defendant Ward to Plaintiff in the context of settlement discussions with respect to the collection action, 1:04-CV-191.  Defendants allege that Plaintiff

16

breached those agreements by filing this action, attaching documents obtained under those agreements.

While the nature of the claim of breach was not entirely clear from the allegations themselves, the Court gleans from the parties' memoranda that Defendants base the claim upon Plaintiff's use of the documents in question and not upon their publication in this action. The Court is reassured of that interpretation of the counterclaim by virtue of Defendants' disavowal of any interest in maintaining the documents under seal in this action when the Court inquired at the January 19, 2005, hearing on Plaintiff's motion for a temporary restraining order. Plaintiff had filed the documents under seal. The Court asked if any reason for maintaining them under seal existed, and Defendants failed to identify one. Clearly, it is the use of the documents and the information contained therein in this action that forms the basis for the breach of contract counterclaims.

The parties are in apparent agreement that Plaintiff never executed the proposed protective order that forms one basis for the claim of breach. Defendants attempt to sue for its breach but agree that Defendant Ward provided the documents in question without obtaining Plaintiff's signature on the stipulated protective order.

Defendants have attempted to demonstrate that an agreement was reached but not memorialized in writing by

referring to an interchange between counsel at the deposition of John Mellott on July 20, 2004.  There, however, counsel agreed that a protective order would be put in place to protect the documents then provided, which included "tax returns,. . . bank statements,. . . a financial statement."  Counsel for Plaintiff repeated that those were the only documents in question at that time.  Of those documents, only a draft of a financial statement is attached to Plaintiff's complaint in this matter.  Obviously, Defendant Ward and her counsel produced that document to Plaintiff with the understanding that it would be kept confidential, and Plaintiff's counsel agreed with that understanding.  To the extent that Defendants may rely upon any alleged agreement manifest in the transcript of the deposition of John Mellott, their claim for breach of that agreement pertains only to the financial statement.

The agreement is not that embodied in the proposed stipulated protective order, however, but that reflected in the interchange between counsel.  The agreement reflected in that interchange, as it pertains to the financial statement, was that Plaintiff would agree to treat it as confidential.  In the draft of the stipulated protective order then under consideration, the term "confidential" was to denote material that could not be used "for any purpose except in connection with this action."  To the extent that confidential documents were filed with the Court,

they were to be filed under seal with certain other conditions
not consistent with the Court's electronic filing system.

When Plaintiff initiated this action, which Defendants
have not argued is <u>not</u> in connection with 1:04-CV-191, they filed
their complaint, all attachments, and their motion for temporary
restraining order under seal in envelopes as contemplated by the
parties' agreement pertaining to the confidentiality of the
financial statement.  The Clerk opened the seals and placed the
documents on the electronic docket under seal.  In other words,
Plaintiff complied with the terms of any agreement between the
parties reflected in the interchange between counsel at John
Mellott's deposition and continued to do so until the hearing on
its motion for a temporary restraining order at which Defendants
disavowed any interest in having the documents remain under seal.
To the extent that the envelopes were unsealed and documents
removed, it was at the insistence of the Clerk for electronic
filing purposes.[3]  The Court finds no basis for a claim of breach
in those facts.

As regards the mediation confidentiality agreement,
Plaintiff represents, and Defendants do not dispute, that the
only document attached to the complaint in this matter that was
arguably produced under the mediation confidentiality agreement
was the Moore Trust document.  Defendants contend that

---

[3]The Court has confirmed these facts with its docketing clerk and hereby
takes judicial notice of them.

Plaintiff's use of that document in this action violated two provisions of the mediation confidentiality agreement:

> 2. All statements made during the course of the mediation are privileged and confidential settlement discussions, are made without prejudice to any party's legal position, are non-discoverable and inadmissible for any purpose in any legal proceeding, and shall not be communicated in any manner to anyone other than the parties and their respective attorneys.
>
> * * *
>
> 4. No aspect of the mediation shall be relied upon or introduced as evidence in any arbitral, judicial, or other proceeding.

The parties have not engaged in argument about the meaning of the word "statements" in paragraph 2 of the mediation confidentiality agreement. The Court concludes, therefore, that they agree that a statement is a declaration or assertion in accordance with the ordinary meaning of the word. The trust document would not, in accordance with that ordinary meaning, be a statement and would not, therefore, be covered by paragraph 2 of the mediation confidentiality agreement.

On the other hand, the document, having been produced in the context of the mediation would be an aspect of the mediation. Accordingly, paragraph 4 could be read as an agreement on Plaintiff's part not to rely upon it in any judicial proceeding. By attaching it to the complaint in this matter, Plaintiff has relied upon it in a judicial proceeding.

Plaintiff contends, nevertheless, that its use of the Moore Trust document in that fashion did not constitute a breach of the mediation confidentiality agreement.  It bases that contention on O.R.C. § 2317.023(D), which, at the pertinent time, provided as follows:

> This section does not prevent or inhibit the disclosure, discovery, or admission into evidence of a statement, document, or other matter that is a mediation communication but that, prior to its use in a mediation proceeding, was subject to discovery or admission under law or a rule of evidence or was subject to disclosure as a public record . . . .

Plaintiff argues that the Moore Trust document was both discoverable and a matter of public record before the execution of the mediation confidentiality agreement and that the statute excepts it from the agreement.

Defendants correctly observe that subsection (D) pertains to the confidentiality provided by the remainder of that statute and is silent with respect to contractual confidentiality.  Accordingly, while Plaintiff's argument brings into sharp focus the issue raised by Defendants' assertion of confidentiality for the Moore Trust document, the statute does not resolve the question.

The Moore Trust document, executed on July 23, 2004, was placed in the public record on October 7, 2004.  Defendants do not argue that Plaintiff could not have obtained it from the

public record before the January 2005 mediation. Plaintiff concedes, however, that it did not become aware of the existence of the document until Defendant Ward produced it at the mediation. The issue, then, is whether Defendants may use the mediation confidentiality agreement to render a publicly available document inadmissible in a judicial proceeding or claim damages from its use in such a proceeding.

In this case, the Court is persuaded that the answer is contained in the mediation confidentiality agreement itself. In paragraph 5 of that agreement, the parties recite their understanding that they "are disclosing sensitive information in reliance upon this agreement of confidentiality." The understanding of the parties is clear: they are agreeing to keep confidential and to refrain from the use of sensitive statements and documents. The ownership of a parcel of real estate is not sensitive information. The agreement cannot be read as manifesting an understanding or intent by the parties to make privileged or confidential documents that were readily obtainable outside the mediation. Paragraph 3 of the mediation confidentiality agreement specifically provides that "[t]he confidential and privileged character of any information is not altered by disclosure to the mediator." In other words, privileged and confidential information revealed in mediation shall remain privileged and confidential. Documents that are

neither privileged not confidential are not covered.  Any other interpretation of the agreement would lead to nonsensical results and permit the use of mediation to perpetrate frauds and injustices in violation of public policy.  See S.D. Ohio Local Rule 16.3(c)(1) ("facts otherwise admissible or subject to discovery do not become inadmissible or protected from discovery solely by reason of disclosure in an ADR proceeding in this Court").

        The Court concludes that Plaintiff did not, as a matter of law, breach the mediation confidentiality agreement by reliance upon the Moore Trust document in this action.  For that reason, and those set forth above, the Court concludes that Plaintiff is entitled to summary judgment with respect to Defendants' breach of contract counterclaim.

        2.  The Abuse of Process Counterclaim

        Defendants allege that Plaintiff may have initiated this action properly and based upon probable cause but that, after the denial of its motion for a temporary restraining order, it has perverted the action to accomplish an ulterior purpose: the harassment and financial injury of Defendants.  Plaintiff seeks summary judgment with respect to the abuse of process allegations.

In order to prove abuse of process under Ohio law, Defendants must establish each of the following:

(1) that Plaintiff set a legal proceeding in motion in proper form and with probable cause;

(2) that Plaintiff perverted the proceeding to attempt to accomplish an ulterior purpose for which it was not designed; and

(3) that direct damage has resulted from the wrongful use of process.

See Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A., 68 Ohio St.3d 294, 298 (1994). "[T]he key consideration in an abuse of process action is whether an improper purpose was sought to be achieved by the use of a lawfully brought . . . action." Id. at 300. Plaintiff contends that Defendants cannot prove the second element of the claim.

In opposition to Plaintiff's motion for summary judgment, Defendants have identified four bits of "evidence" in support of the "ulterior purpose" element: testimony by two expert witnesses in this case, the Court's denial of Plaintiff's motion for a temporary restraining order, Plaintiff's "admission" in its memorandum in support of its motion for summary judgment in this matter that it had not adequately prepared for the temporary restraining order hearing, and Plaintiff's amendment of the complaint to exclude the two entity defendants immediately upon their assertion of counterclaims against Plaintiff.

24

The identified testimony by expert witnesses does not, even when viewed in the light most favorable to Defendants, support the proposition that Plaintiff maintained this action for the purposes of harassing Defendants and inflicting financial injury upon them.  Plaintiff's persistence in the face of the Court's denial of the motion for a temporary restraining order, a preliminary ruling issued before Plaintiff had had the benefit of discovery, is not evidence of an ulterior purpose. Plaintiff's admission that it did not adequately present its position at the temporary restraining order hearing is scarcely evidence in support of an ulterior purpose.  If anything, it supports the contrary position that Plaintiff persisted in the belief that with adequate preparation it could prove a fraudulent conveyance.  Finally, because Plaintiff filed its first amended complaint before Thomas Emery's Sons, LLC, and Shadow Hill I, LLC, asserted counterclaims, the fourth piece of "evidence" upon which Defendants rely is a misconstruction of the facts.

The Court concludes, therefore, that Defendants have not identified a scintilla of evidence of ulterior purpose on the part of Plaintiff in maintaining this action after the Court denied its motion for a temporary restraining order.  For that reason, Plaintiff is entitled to summary judgment with respect to the abuse of process counterclaim.

3.  The Counterclaim for Violation of O.R.C. § 2323.51

Defendants claim that Plaintiff violated O.R.C.
§ 2323.51 by filing this action or by maintaining it after the
Court had denied its motion for a temporary restraining order.
The statutory provision upon which Defendants rely prohibits
frivolous conduct in civil actions.  "Frivolous conduct" is
defined as either serving merely to harass or maliciously injure
another party or not warranted under existing law or supportable
by a good faith argument for an extension, modification, or
reversal of existing law.  See O.R.C. § 2323.51(A)(2)(a)(i) and
(ii).

In opposition to Plaintiff's motion, Defendants
identify the same "evidence" upon which they relied in support of
their abuse of process counterclaim.  The Court is not persuaded
that anything Defendants have identified supports their claim
that Plaintiff's maintenance of this action amounts to frivolous
conduct.  Moreover, the Court is persuaded, as it has made clear
in previous portions of this Memorandum and Order, that Plaintiff
has adduced sufficient evidence to warrant a trial on its
fraudulent conveyance claim.  Accordingly, the Court concludes as
a matter of law that Plaintiff's prosecution of this action has
not amounted to frivolous conduct.  Plaintiff is entitled to
summary judgment with respect to the counterclaim for violation
of O.R.C. § 2323.51.

4.   The Tortious Interference Counterclaim

Defendants allege that, by maintaining this action, Plaintiff has tortiously interfered with their business relationships with the real estate agent they have engaged to market and sell 9600 Tall Trail and with potential purchasers of that property.  Plaintiff seeks summary judgment with respect to that counterclaim.

Under Ohio law, in order to succeed on a claim of tortious interference with a contractual or business relationship, a party must demonstrate the following:

(1)  the existence of a contract or of a business relationship;

(2)  the wrongdoer's knowledge of the contract or relationship;

(3)  the wrongdoer's intentional procurement of the contract's breach or of the termination of the relationship;

(4)  the lack of justification; and

(5)  resulting damages.

See Kenty v. Transamerica Premium Insurance Co., 72 Ohio St.3d 415, syllabus ¶2 (1995).  In support of its motion for summary judgment, Plaintiff argues that the only relationship Defendants can identify is that between them and the real estate agent for 9600 Tall Trail.  Plaintiff notes that Defendants do not allege

that that relationship has terminated.  On that basis, Plaintiff seeks summary judgment.

While not conceding that summary judgment is appropriate, Defendants tacitly recognize that they cannot identify a relationship that has terminated as a result of conduct by Plaintiff.  Indeed, with respect to their relationship with the real estate agent, they argue only that Plaintiff "has made it more difficult for the Defendants to do business with the listing broker and agent and to interest potential buyers in the house."  Defendants' memorandum in opposition (Doc. 79), p. 13. That fact, even if supported by evidence, does not satisfy the termination element of the tortious interference claim. Accordingly, Plaintiff is entitled to summary judgment with respect to that claim.

5.  The Slander of Title Counterclaim

Defendants allege that "[b]y putting the lis pendens on 9600 Tall Trail via the suit at bar," Plaintiff has published slanderous statements disparaging the title of the Moore Trust to that real property.  The parties agree that malice or reckless disregard for the truth is an element of the slander of title claim under Ohio law.  <u>See</u> Plaintiff's memorandum in support (Doc. 78), p.18; Defendants' memorandum in opposition (Doc. 79), p.18.  In support of its motion for summary judgment, Plaintiff

contends that Defendants cannot adduce evidence in support of that element of the claim and that, for that reason, Plaintiff is entitled to summary judgment.

In their memorandum in opposition, Defendants identify only one bit of "evidence" of reckless disregard: Plaintiff's admission that it failed to perform an adequate pre-filing investigation before initiating this action.  Defendants cite, specifically, page three of Plaintiff's memorandum in support of its motion for summary judgment with respect to its own claims. Defendants have mischaracterized that "admission."

In the cited portion of its memorandum, Plaintiff "admitted" only that it was not, as of the date of the hearing on its motion for a temporary restraining order, "in possession of sufficient facts to explain to the Court the reasons to consider the transfer of the 9600 Tall Trail house as a fraudulent transfer."  Plaintiff did not admit that it had not done an adequate pre-filing investigation or that it recklessly disregarded the truth.  It simply admitted that it could not demonstrate a likelihood of success on the merits on the basis of the facts then known to it.  The "admission" is not evidence of malice or reckless disregard.  Many of the pertinent facts, particularly those pertaining to the consideration for the transfer in question, were in the sole possession of Defendants

and were not disclosed by them until during or after the hearing
on the motion for a temporary restraining order.

The Court concludes that Defendants have not identified
evidence in support of the malice/reckless disregard element of
the slander of title claims and that, for that reason, Plaintiff
is entitled to summary judgment with respect to that claim.  Its
motion for summary judgment with respect to the counterclaims
(Doc. 78) is, therefore, **GRANTED** in its entirety.

F.  <u>Conclusion</u>

For the reasons set forth herein, Defendant
Sittenfeld's motion for summary judgment (Doc. 32) is **GRANTED.**
Plaintiff's motion for summary judgment with respect to its own
claims (Doc. 64) is **DENIED.**  Defendants' motion to defer
consideration of that motion (Doc. 70) is **DENIED** as **MOOT.**
Defendants' motion for summary judgment (Doc. 82) is **DENIED** with
respect to Plaintiff's fraudulent conveyance claim and **GRANTED**
with respect to Plaintiff's common law fraud claim.  Plaintiff's
motion for summary judgment with respect to Defendants'
counterclaims (Doc. 78) is **GRANTED.**  This action will proceed
only on Plaintiff's fraudulent conveyance claim against

Defendants Lea Ward, Betty Moore, and Alfred Moore.  All other parties to this action are **DISMISSED**.

       **IT IS SO ORDERED.**

                                       /s/
                                 Sandra S. Beckwith, Chief Judge
                                 United States District Court